IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DUNHILL PARTNERS INC.** § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | |
| § | |
| **AMERICAN HOME ASSURANCE** § | CIVIL ACTION NO.   18-CV-57-RAW |
| **COMPANY AND SCOTT CLOER** § | |
| § | |
| Defendants § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, DUNHILL PARTNERS, INC, (hereafter "Dunhill") files this complaint against Defendants, AMERICAN HOME ASSURANCE COMPANY and SCOTT CLOER, and would show this honorable court as follows:

### I. Parties

1. Plaintiff, Dunhill Partners, Inc. (hereafter "Dunhill") is a Texas corporation doing business in Oklahoma.

2. Defendant, American Home Assurance Company (hereafter "AHAC"), is a New York insurance company doing business in Oklahoma, with its principal place of business in New York, New York. AHAC is licensed to conduct business in the state of Oklahoma and may be served with process through the Oklahoma Department of Insurance, at its home office, 70 Pine St. FL 4 New York, New York 10270, or at its mailing address, 175 Water St, FL 18 New York, New York 10038.

3. Defendant, Scott Cloer (hereafter "Cloer"), is an Oklahoma resident and insurance adjuster whom can be served at his place of employment at AIG Claims, 19837 Oakshire Dr., Edmond, Oklahoma 73012.

4. The Court has jurisdiction over this dispute pursuant to 28 USC §1332(a)

## II. Agency and Respondeat Superior

5. Whenever in this petition it is alleged that the Defendants did any act or thing, it is meant that Defendants themselves or their agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendants or done in the normal routine, course and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## III. Facts of the Case

6. Dunhill purchased a multi-line GL/Property insurance policy from AHAC (Policy Number 021565675) to cover property losses at Dunhill's property for the policy period June 22, 2015 to June 22, 2016 (hereafter, "the Policy"). On or about April 11, 2016, during the subject policy period, wind and hail storms caused substantial damage to Dunhill's property located at 913-1027 W. Main St., Durant, Oklahoma 74701. Dunhill thereafter reported this loss to AHAC and its agents who assigned this loss the claim number of 9107218661US, with a date of loss of April 11, 2016.

7. On or about June 6, 2016, AHAC engaged the services of Scott Cloer, general adjuster and estimator for AIG Claims, Inc. (hereinafter "AIG") to perform an inspection of Dunhill's property damages as a result of the wind and hail storm. Dunhill believes that AHAC hired Cloer and AIG because they are biased and knows these adjusters will give AHAC low-balled and result-oriented estimates on which AHAC can deny or under pay an insured's storm damage claims.

8. Thereafter, on July 5, 2016, AHAC and Cloer hired PT&C Forensic Consulting Services (hereinafter "PT&C") to investigate and report on the severity of the windstorm and hail damage to Dunhill's property from the April 11, 2016 storm. In an August 10, 2016, report PT&C concluded that the roofing exhibited isolated hail related damage in the form of fractures in the modified

bitumen membrane observed at an average of 1 hail impact per square to the roofs.  PT&C also noted damage to the roof mounted mechanical units, metal roof covering, and damage to the bitumen roof membrane.

9. Based on this report, in an August 15, 2016, Cloer estimated the cost of the storm damage repairs to Dunhill's property at only $57,487.30.  After applying Dunhill's deductible, AHAC determined the net claim was below the Policy's deductible and as a result no payment was issued.  Even though AHAC and Cloer noted damage to the roofs and HVAC, they still provided a low-balled estimate for the damage resulting from the April 11, 2016 wind and hail storm.  Dunhill believes that AHAC hired Cloer, AIG, and PT&C because they are biased and knows these adjusters and engineers will give AHAC low-balled and result-oriented estimates and reports on which AHAC can deny or under pay an insured's storm damage claims.

10. Believing that AHAC and AIG low-balled his claim, Plaintiff retained Gary Treider of Chaparral Consulting and Forensics, to inspect and assess the damages to Plaintiff's property as a result of the hail and windstorm.  On August 21, 2016 and August 22, 2016, Mr. Treider inspected the property.  In an October 16, 2016 report, Mr. Treider concluded that (1) hailstorms producing hail from the southwest, northwest, and northeast had occurred recently at the Plaintiff's property with the largest hail spatters being slightly larger than two inches in diameter; (2) a car dealership in close proximity had hail damage from an April 19, 2016 storm based on Mr. Treider's interview with the car dealer; (3) the hail from the April 19, 2016 storm was irregular in shape and the sharp edges of irregular hailstones that increased the potential for hail damage to roof membranes; (4) the largest and most significant hail at Plaintiff's property was confirmed to have occurred on April 19, 2016 from the northeast based on visual observations of: directional hail spatter; the direction, angle and severity of hail scuffs on wood fencing; and the shape and direction of AC cooling fins dents, and matching those observations to available data and wind records; (5) a sample of the modified roof

membranes confirmed that hail caused fractures on the bottom side of the membrane, which is typical hail damage for APP modified bitumen membrane; and (6) the membrane did not have corresponding granule loss at the points of hail impact so finding all of the hail damage was not possible for making effective spot repairs. A copy of this report was submitted to Cloer in an October 17, 2016 email.

11. In a November 1, 2016 email, Dunhill informed Cloer that Dunhill would like to resolve this issue as quickly as possible to prevent roof leakage since the property was about to be going through rainy season. AIG requested that Envista Forensics (formerly PT&C) conduct a supplemental inspection of the roof for hail damage and procure test samples from the roof for laboratory analysis to be conducted by HAAG Research and Testing (hereafter "HAAG"). Dunhill objected to sending samples to the lab for testing because this would cause undue delay, and insisted that visual observation was the protocol set by AHAC's own engineers. However, AHAC and its adjusters insisted that the only way to move forward was to provide samples for lab testing and assured Dunhill this process would be expedited.

12. A supplemental inspection occurred on November 3, 2016. Samples were taken by Envista, on behalf of AHAC and its adjusters to be provided to HAAG. Also present was Plaintiff's general contractor, Tice Enterprises, who obtained its own samples for testing to be conducted by APEC Engineering & Laboratory, LLC (hereafter "APEC") on behalf of Plaintiff and Madsen, Kneppers, & Associates (hereafter "Madsen") sent on behalf of AHAC and its adjusters to provide an HVAC repair estimate.

13. HAAG provided its report of findings on January 19, 2017 and based on this report, Envista provided a supplemental report dated February 3, 2017 stating that after reviewing the laboratory analysis it concluded that the modified bitumen roof covering on Plaintiff's building was

not damaged by hail. In a February 8, 2017 email, Cloer informed Plaintiff that no additional money or repairs would be approved for the roof.

14. On February 11, 2017, Madsen estimated the damages from the subject storm to the HVAC system of Plaintiff's property at $88,925.94. Based on this estimate, Cloer revised his initial estimate and on February 22, 2017 re-estimated the damages at $147,384.13. After applying Dunhill's deductible of $100,000.00, AHAC determined the net claim was $47,384.13. On February 25, 2017, AHAC issued a payment for this amount to Plaintiff.

15. Believing that once again, AHAC had low-balled its claim, Plaintiff had APEC move forward and conduct its own report on the roof samples provided by Tice from the storm damaged property. Ten samples were provided from the roof. The samples were analyzed on March 15, 2017. APEC's laboratory results summarized that all samples had breaks, cracks and fractures in the cap sheet, plys, and base sheet consistent with hail damage. All ten samples showed actual or possible liquid penetration showing that the roof cannot maintain its intended function after the April 2016 storm. This report showed that the damage to the roof was far greater than AHAC and its adjusters claimed it to be. A copy of the report was forwarded to AHAC and its adjusters in a June 19, 2017 email.

16. AHAC and it adjusters requested that Envista provide a second supplemental report based on APEC's findings. In a July 31, 2017 report, Envista stated that after reviewing the laboratory analysis provided by APEC, it had no changes to the previously issued conclusion stated in its initial supplementation in which it determined that the modified bitumen roof covering on Plaintiff's building was not damaged by hail.

17. On August 10, 2017, Tice determined that the reasonable and necessary cost to properly repair the windstorm and hail damage to Plaintiff's property was $2,384,765.11 less Plaintiff's deductible of $100,000 for a net claim of $2,284,765.11. Tice determined that the April 11, 2016

storm caused direct physical damage from hail to the property's exterior, roof, metal wall panels, electrical, plumbing, equipment, and HVAC systems.

18. To date, AHAC and its adjusters have failed to fully and properly pay Plaintiff for all the damages as a result of the April 11, 2016 hail and windstorm. AHAC and its adjusters failed to get back to Dunhill to properly resolve this claim. AHAC knew or should have known of the storm damage and their liability has become clear. AHAC has used many methods to deny and delay proper payment of the claim.

## IV. First Cause of Action for Breach of Contract

19. The acts and omissions of AHAC and Cloer in the investigation and evaluation of Plaintiff's claim were unreasonable. Defendants AHAC and Cloer arbitrarily and capriciously breached the policy of insurance issued to Plaintiff by failing to pay benefits due it under the terms of the policy. As a proximate result of AHAC's and Cloer's breach of contract, Plaintiff has suffered damages and other losses in the form of policy benefits, financial losses, financial hardship, attorney expenses, and other incidental damages, exclusive of interest and costs.

## V. Second Cause of Action- Bad Faith

20. AHAC and Cloer were unreasonable in their investigation, evaluation, and nonpayment of Plaintiff's claim. AHAC and Cloer arbitrarily and capriciously breached their duty to deal fairly and in good faith with Plaintiff through the following acts and omissions:

A. By failing to pay the amount due Plaintiff in accordance with the terms and conditions of the subject commercial policy;

B. By withholding payment of the benefits from Plaintiff's claim even though AHAC and Cloer knew Plaintiff's claim for these benefits was valid;

C. By refusing to honor Plaintiff's claim by knowingly misconstruing and misapplying provisions, terms, and/or definitions of the subject policy;

D. By intentionally breaching its fiduciary duty owed to Plaintiff by failing to provide the protection for which Plaintiff paid; and

E.  By violating the "Unfair Claims Settlement Practices Act" in 36 O.S. §§ 1250.1-1250.16.

21. As a proximate result of AHAC's and Cloer's breach of their duty of good faith and fair dealing, Plaintiff has suffered damages in the form of policy benefits, financial losses, mental and emotional distress, financial hardship, attorney expenses and other incidental damages, exclusive of interest and costs.

### VI. Third Cause of Action – Punitive Damages

22. The unreasonable conduct of AHAC and Cloer in the handling of Plaintiff's claim was intentional, willful, and wanton and was committed with a reckless disregard for the rights of the Plaintiff for which punitive damages are hereby being sought. Furthermore, AHAC's and Cloer's conduct was part of an overall plan or scheme designed to, and which in fact did result in, increased profits and financial windfall to Defendants. AHAC and Cloer enjoyed increased financial benefit and were unjustly enriched as a direct result of the wrongful conduct described above herein, which resulted in injury to Plaintiff.

### Prayer for Relief

WHEREFORE, premises considered, Plaintiff demands trial by Jury. Plaintiff prays for judgment in its favor and against each Defendant named herein for:

A. Payment for all contractual benefits for all coverages afforded to Plaintiff under its commercial insurance policy for damage to its place of business caused by the April 11, 2016 hail and windstorm, with interest on all amounts due;

B. Compensatory damages for intentional infliction of emotional distress;

C. Disgorgement of the increased financial benefits derived by any and/or all of the Defendants as a direct result of the conduct causing injury and damages to Plaintiff;

D. Actual and punitive damages in an amount in excess of $2,237,380.98; and

D. Prejudgment and post judgment interest on all damages, court costs, expert fees, attorney's fees and expenses.

Respectfully submitted,

*Loree & Lipscomb*
The Terrance at Concord Park
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310

By: */s/ Todd Lipscomb*
    Todd Lipscomb
    Texas State Bar No. 00789836
    todd@lhllawfirm.com

Attorney for Plaintiff